## In re LAKE JACKSON SUGAR CO.

### (District Court, S. D. Texas. January 28, 1904.)

### No. 1,044.

1. BANKRUPTCY—INVOLUNTARY BANKRUPTS—PERSONS ENGAGED IN FARMING—CORPORATIONS.

Bankr. Act July 1, 1898, c. 541, § 4b, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], provides that any natural person except a wage-earner or a person engaged chiefly in farming or the tillage of the soil, and any corporation principally engaged in manufacturing, trading, etc., owing debts to the amount of $1,000 or over, may be adjudged an involuntary bankrupt. *Held*, that a person engaged chiefly in farming or the tillage of the soil should be construed to apply only to natural persons, and not to corporations.

2. SAME—EVIDENCE.

Evidence *held* insufficient to establish that a corporation against which involuntary bankruptcy proceedings were brought was engaged chiefly in farming or the tillage of the soil, within Bankr. Act July 1, 1898, c. 541, § 4b, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], providing that any natural person except a wage-earner or a person engaged chiefly in farming or the tillage of the soil, etc., may be adjudged an involuntary bankrupt.

## In Bankruptcy.

The following is the referee's report:

To the Honorable Waller T. Burns, Judge of the United States District Court for the Southern District of Texas:

This proceeding, involuntary in its nature, was instituted 4th of November, 1903, by H. D. Taylor & Sons and other parties against the Lake Jackson Sugar Company, of Brazoria county, Texas, by petition duly sworn to and filed with the clerk of this court; in which petition it is alleged that the petitioners are creditors of the said Lake Jackson Sugar Company, having provable claims against it to the amount, in the aggregate, of $500 and over; that the said company owes debts to the amount, in the aggregate, of $1,000 and over; that the said company is insolvent, and is neither a wage-earner nor is it engaged principally in farming or in the tillage of the soil; that within the four months next preceding the filing of their petition, to wit, on the 3d day of November, 1903, a receiver, because of the said company's insolvency, was put in charge of its properties, under the laws of the state of Texas; the name of which receiver is T. E. Bennett, of Angleton, Texas; that said company has committed other acts of bankruptcy by paying money to certain of its creditors, thus creating a preference in favor of such creditors over other of its creditors; that said company has long ceased to pay its debts, and that suits are now pending against it. The prayer of the petitioners is that the Lake Jackson Sugar Company be adjudged bankrupt within the purview of the acts of Congress relating to bankruptcy.

To the said petition of H. D. Taylor & Sons et al. the said receiver, T. E. Bennett, made answer under oath, virtually admitting all the allegations therein, except that which alleges that "the Lake Jackson Sugar Company is neither a wage-earner nor a person engaged principally in farming or the tillage of the soil." To the same effect did several intervening creditors of said company make answer thereto, affirmatively alleging in their respective answers that said company was and is chiefly engaged in the business of farming and tillage of the soil. The Lake Jackson Sugar Company, though duly served with process, wholly made default.

The petitioners filed a replication to these answers, thus raising the issue as to whether or not the defendant, the Lake Jackson Sugar Company, is or

¶ 1. What persons are subject to bankruptcy laws, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.

is not engaged chiefly in farming and the tillage of the soil, and this is the only issue in the case. And in pursuance of an order of your honor, made in the above cause, and bearing date December 3, 1903, whereby the undersigned was authorized and directed, as referee of this honorable court, "to consider the petition in the above cause, and also to hear the contest therein raised by answers therein filed, and to take such proceedings therein as are required by the acts of Congress relating to bankruptcy, and that the said Lake Jackson Sugar Company and contesting creditors shall attend upon said referee at such date in the near future as shall suit said referee and the parties at interest," I, S. W. Jones, referee, as aforesaid, do report that, having duly extended notices to the said Lake Jackson Sugar Company and to all others in interest, through their attorneys of record, of the time and place for the hearing before me of the matters referred—that is to say, at 11 o'clock a. m., on the 19th day of December, 1903, at the United States courtroom in the city of Galveston, Texas—I did, on the day and at the place aforesaid, proceed to consider the said petition and to hear the contest in the above cause raised by answers therein filed, and to take such proceedings therein as are required by the acts of Congress relating to bankruptcy; and, having been attended by Sterling Myer, of the law firm of Hunt & Myer, counsel for the petitioning creditors, A. R. Masterson (for H. Masterson), counsel for T. E. Bennett, receiver, and by A. E. Masterson, counsel for intervening and contesting creditors, and having heard read the pleadings and the documentary evidence and the oral and written testimony produced before me and the arguments of counsel, and having duly and carefully considered the same, and having carefully examined and inquired into the matters so referred, I do find and report as follows:

From the evidence before me I find: That the Lake Jackson Sugar Company was incorporated under the general incorporation act of this state in April or May, 1900, for the purpose of "manufacturing sugar cane into molasses, sugar, and all other products of sugar cane, and for that purpose to purchase material necessary for such manufacturing, and to sell the products of such manufacturing business; to purchase such real estate, machinery, and appliances as may be necessary or suitable to conduct such business." That very shortly after its incorporation the said company leased two large plantations upon which to raise sugar cane and other products, constructed a railway, equipped with necessary rolling stock, from these plantations to a sugar mill, where it could convert the sugar cane into merchantable commodities, and thence to a trunk line of railway by which the said company could market its products. That it about the same time began the cultivation upon said lands of sugar cane and corn, except a small portion thereof, which it sublet to a third party for rice culture upon shares. That it raised each year large quantities of sugar cane, varying with the seasons, and also corn, employing for that purpose a large number of live stock and from seventy-five to one hundred laborers. That about six or seven hundred acres of said lands were employed in the raising of such cane. That the juice from this cane was manufactured by the said company into molasses, sugar, and syrup, and the commodities were placed, each year, upon the market, and sold in most of the cities and towns of any size in the state of Texas; and that the said company neither purchased nor sold any cane.

Joseph Rhea testified, besides other facts: That he is now, and had been for four or five years previous hereto, the manager for the defendant company. That the company employed its laborers by the day. That the mill was used in reducing the cane raised into sugar, molasses, and syrup. That no cane was ever used except that raised on the two plantations. Never raised any cotton. That five or six hundred acres were used in raising corn. That the corn was used in feeding the live stock employed on the two plantations; that this live stock is valued at $10,000. That the cane crop raised by the company in 1902 was valued at $20,000. That the manufactured products of the said company were its only sources of revenue; that these products were generally sold to jobbers. That letters were often written offering them for sale. That "we [meaning the defendant] sent out samples and wrote letters offering them for sale to jobbers throughout the country. We manufactured syrup of a very high grade, and placed it in every town in Texas of any size, during

the present season, and no complaint have we had. We had a ready sale for this syrup, and sold it through jobbers. We also sold our sugar through jobbers. The syrup was put up in cans and some in barrels. The store on the plantations was for the accommodation of our employés. On the 1st of January, 1903, we carried a stock worth about $2,500, which consisted of groceries, dry goods, hardware, farm implements, lumber, and shingles. This store was open to any one who wished to buy, and others would buy as well as our laborers and people in the vicinity were aware of that fact. We generally kept a general stock of goods on hand in the store. We sold at a profit, and would make from 25 to 50 per cent. profit. That railroad and its equipment cost about $40,000, and the sugar mill about $15,000. The Lake Jackson Sugar Company does not own the sugar mill. We did not pay our laborers wages in merchandise, but gave them time checks, which were equivalent to money, and these time checks were cashed at the end of every two weeks, or they could be used in the purchase of merchandise at the store, if the laborer so wished. We put up our sugar in barrels, just as other manufacturers do."

The following is a letter addressed by the defendant, through J. Rhea, its manager, recognized by him as emanating from him, together with the printed heading thereon, which form was generally used in the company's correspondence:

"R. Oliver, President.      J. Walker, Secretary.      Jos. Rhea, Manager.
"The Lake Jackson Sugar Company.
"Dealers in General Merchandise, Hardware, Harness, Farm Implements,
Builders' Supplies, Lumber, Shingles, Windows, Doors and Sash,
Lime, Cement and Brick.
"Manufacturers of Sugar, Molasses and Pure Ribbon Cane Syrup.
"Angleton, Texas, Jany. 31, 03.

"Messrs. H. D. Taylor and Sons, Houston, Tex.—Gentlemen: We are in receipt of your letter of the 28th inst., and note what you have to say concerning syrup. You state can goods is not going rapidly because you have so much barrel goods on hand, now this is the very reason, as you have acknowledged, 'You have none,' therefore you cannot know of its selling qualities. This goods does not interfere with your sales in barrel good, as it goes to a different trade, it is of a much higher quality and when once the best trade gets it to their table they will constantly call for it. You should put it up to your best customers that they can have an opportunity to give their trade the Pure Article. We are sure that you will be more than satisfied and that every desire you may have for a syrup will be filled when you have put our goods before your trade.

"We are anxious for you to try our goods, not for the sake of a sale, but to have your customers try it, that they will know where the pure goods, the goods with the best flavor and bearing the proper color, can be found. We know our goods can not be equaled and for this reason we insist that you use it. We have placed it in every town in Texas during the present season and not one complaint have we had. We trust you will give this matter, the question of pure syrup, due consideration and await your orders with pleasure.

"We enclose B/L to the candy we are returning, you will please credit our account and mail us credit memorandum. Our samples of sugar went forward on yesterday, which we trust you have by now. Trusting to have you command us at an early date and assuring you our best efforts in filling your orders, we remain,

"Yours very truly,                    The Lake Jackson Sugar Co.
                                      "Jos. Rhea, Manager."

The bankrupt act of July 1, 1898, c. 541, § 4b, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], provides as follows: "Any natural person, except a wage earner or a person engaged chiefly in farming or the tillage of the soil; any unincorporated company, any corporation engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits, owing debts to the amount of $1,000.00 or over, may be adjudged an involuntary bankrupt upon default or an impartial trial, and shall be subject to and entitled to the pro-

visions of this act. Private bankers, but not national banks, or banks incorporated under state or territorial laws, may be adjudged involuntary bankrupts." And it is claimed in this case by the respondents that, inasmuch as the defendant company is, as alleged by them, chiefly engaged in farming or the tillage of the soil, it (the defendant) comes within the exception above quoted, to wit, "a person engaged chiefly in farming or the tillage of the soil," and is not amenable to said bankrupt act. But it seems to me that this contention is clearly erroneous. I have been cited to no authority, nor have I been able to find any, where such a defense has been advanced by a corporation in an involuntary proceeding. Indeed, it is rather a novel idea that a corporation should be engaged chiefly in farming or the tillage of the soil. The phrase above quoted from the act should be and has been strictly construed, even in cases where an individual person was alleged bankrupt (Collier on Bankruptcy, p. 54); and, in my opinion, the use of the phrase "natural person," when construed in connection with the above-quoted phrase, "except wage-earners and those chiefly engaged in farming or the tillage of the soil," and all that follows it, is to exclude corporations from this exception. Collier on Bankruptcy, p. 53.

But suppose I am in error in this. Has the defendant company been brought within this exception according to the facts disclosed? From those facts it appears that it (the defendant company) has been for several years engaged in three different branches of business—in farming, in merchandising, and in the manufacture of sugar, molasses, and syrup from the sugar cane which it raised upon the plantations cultivated by it; and of these, which did the company deem of paramount importance to its welfare? Was it its farming or its manufacturing interest or enterprise? It raised corn, it is true, but sold none, consuming all of it in feeding the mules, numbering fifty head and over, employed by it in cultivating two plantations, whereon was raised this corn, and also sugar cane, the juice of which latter was converted by the company into sugar, molasses, and syrup, and sold in the open market; one year realizing therefrom $20,000. The company bought no cane and sold none, and its only source of revenue was from its manufactured articles. If these facts be true—and they are nowhere contradicted—the only natural conclusion is that manufacturing, and not farming, was its chief pursuit or vocation; that the latter was only incidental to the former, and only pursued in furtherance of its manufacturing interests—in other words, that its manufacturing interests were deemed by it of paramount importance to its welfare and pecuniary advancement. The premises considered, I conclude that the defendant, the Lake Jackson Sugar Company, is insolvent, has committed acts of bankruptcy, and is amenable to the acts of Congress relating to bankruptcy, and that an order adjudicating it bankrupt should be entered by this honorable court in this case; and I respectfully so recommend.

Respectfully submitted,　　　S. W. Jones, Referee in Bankruptcy.

Hunt & Myer, for petitioning creditors.

Masterson, Morris & Masterson, for receiver.

A. E. Masterson, for contesting creditors.

BURNS, District Judge. Exceptions overruled, and referee's report confirmed.

---

### In re PANCOAST.

(District Court, E. D. Pennsylvania. April 30, 1904.)

### No. 1,912.

1. BANKRUPTCY—PROOF OF CLAIMS—AUTHENTICATION.

　　Under Bankr. Act July 1, 1898, c. 541, § 20, 30 Stat. 551, 552 [U. S. Comp. St. 1901, p. 2430], a notary public is authorized to administer the oath to a proof of claim, being an officer authorized to administer oaths in proceedings in the courts of the United States by Act Aug. 15, 1876,